**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**EDWARD GARAFOLA,**

                                        **09 Civ. 10280 (JGK)**

                    **Petitioner,**

                                        **OPINION AND ORDER**

        **- against -**

**UNITED STATES OF AMERICA,**

                    **Respondent.**

---

**JOHN G. KOELTL, District Judge:**

The petitioner, Edward Garafola, appearing pro se, moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The petitioner also seeks leave of court to conduct discovery pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2255.

The petitioner pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to participating in the conduct and affairs of a racketeering enterprise—the Gambino Organized Crime Family of La Cosa Nostra—through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). Pursuant to the Plea Agreement the petitioner waived his right to appeal or litigate under 28 U.S.C. §§ 2255 and 2241 a sentence of life imprisonment or less.

The petitioner now challenges his conviction and sentence on three grounds: (1) the alleged ineffective assistance of trial counsel; (2) alleged prosecutorial misconduct; and (3) the

alleged abuse of discretion of the district court judge presiding over the petitioner's case for failing to recuse himself <u>sua sponte</u>.  In an amendment to his petition, the petitioner also contends that his trial counsel was ineffective for not objecting to an allegedly incorrect Guidelines Sentencing Range and a sentence beyond the statutory maximum.

## I.

In June 2002, the petitioner, along with Peter Gotti and Thomas Carbonaro, were charged in a two count Indictment with violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") and conspiracy to do so, in violation of 18 U.S.C. §§ 1962(c) and (d) based on activities allegedly related to the "Gambino Organized Crime Family."  The racketeering acts alleged against the petitioner were a murder and murder conspiracy relating to the September 11, 1989, death of Frederick Weiss; conspiracy to commit extortion in the construction industry; and loansharking.  On October 5, 2004, the defendant and his co-defendants were charged in an eight count Superseding Indictment which, among other additions, added as racketeering acts a murder and murder conspiracy relating to the August 8, 1990, death of Edward Garofalo and a conspiracy to murder Salvatore Gravano in 1999 and 2000.  (<u>See</u> Appendix on Appeal, Gov't Mem. Opp. Ex. B ("A.") 23.)  The Gravano murder

conspiracy was also charged in a separate count under 18 U.S.C. § 1959(a)(5), and the construction industry extortion conspiracy, previously charged only as a racketeering act, was now also charged as a separate count, under 18 U.S.C. § 1951. (A. 34-35.)

On or around September 9, 2004, the petitioner was indicted in the Eastern District of New York with three co-defendants—Richard Calabro, Junior Campbell, and the petitioner's son, Mario Garafola—for multiple RICO violations. (Pet'r's Mem. ¶ 32; Pre-Sentence Report, Gov't Mem. Opp. Ex. A ("PSR") ¶¶ 99-100.) The petitioner alleges that his son's indictment was a "devastating blow" and he "wanted to do what ever [sic] he could to see [his son] released." (Pet'r's Mem. ¶ 33.) The petitioner alleges that he directed his attorney, Richard Guay, to inform the prosecutors in the Southern District of New York that he would be willing to plead guilty if the "plea would result in consideration for his son." (Pet'r's Mem. ¶ 34.)

On October 21, 2004, less than two weeks before trial commenced against Garafola's co-defendants, Peter Gotti and Thomas Carbonaro, the petitioner, represented by Richard Guay, pleaded guilty before Judge Casey to Count One of the Superseding Indictment. (A. 54-56, 73-77.) The petitioner pleaded guilty to three predicate racketeering acts: the conspiracy to murder Gravano; the construction industry

extortion conspiracy; and the conspiracy to murder, and the
murder of Edward Garofalo, in or about August 1990.  (A. 54-55,
76-77.)  The petitioner pleaded guilty pursuant to the Plea
Agreement with the Government.  The Plea Agreement provided that
"[t]he defendant hereby acknowledges that he has accepted this
Agreement and decided to plead guilty because he is in fact
guilty."  (A. 59-60.)  In the Plea Agreement, the parties agreed
"that neither a downward nor an upward departure or adjustment
from the stipulated Sentencing Guidelines Range set forth above,
[life imprisonment], is warranted, and that the Stipulated
Guidelines Sentence of life imprisonment should be imposed.
Accordingly, neither party will seek such a departure or seek
any adjustment not set forth herein."  (A. 58.)  The Plea
Agreement also provided that "the Defendant will not file a
direct appeal from, nor litigate under Title 28, United States
Code, Section 2255 and/or Section 2241, any sentence at or below
the Stipulated Guidelines Sentence set forth above (life
imprisonment) . . . ."  (A. 59.)

At the plea proceeding, the Government, at the Court's
direction, summarized the counts to which the petitioner was
expected to plead guilty.  The Government stated that this
included "[t]he murder of Edward Garofalo on August 8, 1990, as
charged in racketeering act 2 of Count 1 . . . ."  (A. 64.)  The
Government noted that, because the petitioner would be pleading

to the "actual murder of Edward Garofalo, . . . the maximum term
of imprisonment for Count 1 [is] life imprisonment."  (A. 64.)

The petitioner confirmed that he had received a copy of the
Superseding Indictment and had discussed it with his attorney.
(A. 65.)  Judge Casey next determined that the petitioner was
competent to plead guilty, that the petitioner was satisfied
with his counsel's representation, and that the petitioner
"underst[ood] what the Government [said he] did[.]"  (A. 66-
67.).  The Court advised the petitioner of the various
constitutional rights he would waive by pleading guilty.
(A. 66-69.)

Judge Casey then asked whether the petitioner was pleading
guilty pursuant to a plea agreement.  (A. 69.)  The petitioner
stated that he was, and that he had reviewed the Plea Agreement
with his lawyer.  (A. 69.)  The petitioner affirmed that he
understood he was "waiving [his] right to appeal directly under
28 U.S.C., Section 2255 and 2241, any sentence within the
stipulated guideline range" and his attorney had explained those
sections to him.  (A. 72.)  The petitioner confirmed that he was
pleading guilty voluntarily and of his own "free will and
choice."  (A. 73.)

The Government next stated the elements of the charged
crimes.  (A. 73-75.)  After explaining the enterprise

requirement for the RICO charge in Count One, the Government

turned to the Garofalo murder:

> With specific regard to the pattern of racketeering
> that the defendant today is pleading guilty to, there
> is racketeering act 2, which is the murder of Edward
> Garofalo.  And on that score the government would have
> to prove at trial that on or about August 8, 1990,
> having conspired to kill Edward Garofalo, the
> defendant Edward Garafola did in fact cause the death
> of Edward Garofalo and that the defendant did so with
> specific intent to cause Mr. Garofalo's death.

(A. 74.)  The petitioner stated that he heard the elements of

the charged crimes and had in fact committed them.  (A. 75.)

The petitioner then admitted that "[f]rom about the late

1970s to about April of 2003 . . . I knowingly, unlawfully

participated together with others in the conduct of the affairs

of a racketeering enterprise as charged in the indictment."

(A. 75-76.)  The petitioner stated with respect to the Garofalo

murder that "in or about August 1990, in this District and in

the Eastern District of New York, I knowingly and unlawfully

conspired with others to murder Edward Garofalo.  About August

8, 1990 I and others did cause this death . . . ."  (A. 76.)

The petitioner admitted that he knew his actions were wrong.

(A. 76.)  After confirming that neither the prosecutor nor

defense counsel knew of any legal reason why the guilty plea

should not be accepted, Judge Casey accepted the petitioner's

plea.  (A. 76-78.)

On September 12, 2005, nearly one year after entering his
guilty plea, and after his co-defendants Peter Gotti and Thomas
Carbonaro had been convicted of Counts One and Two, the
petitioner moved before Judge Casey to withdraw the portions of
his guilty plea relating to the Garofalo murder and on November
22, 2005, filed an amended motion also seeking to withdraw his
guilty plea to the construction industry extortion to the extent
that charge included a sentencing enhancement for the death of
Frank Parasole.  (A. 79.)   The petitioner was represented by
Diarmuid White in connection with that motion.   In a declaration
submitted to the Court, the petitioner claimed that he did not
allocute that he intended to cause Garofalo's death.  (A. 83.)
The petitioner also claimed that, while he had agreed with his
co-conspirators to position his car near 85th Street and 15th
Avenue—several blocks removed from the scene of the planned
shooting so that the shooters could use that car or that the car
could be used as a "crash car"—he did not in fact go to the
"appointed place" on the night of the murder.  (A. 83.)   The
petitioner claimed that he was "innocent of the charge of
murdering Edward Garofalo" and "never admitted to intending to
cause his death . . . ."  (A. 83.)   The petitioner further
asserted that, although he allocuted that he "knowingly and
unlawfully conspired with others to murder Edward Garofalo," he
"did not fully understand the import of those legal words or how

they encompassed [his] conduct." (A. 84.)  Finally, the
petitioner claimed that he had waited nearly a year to make the
motion because he feared that such a motion "might cause the
Government to retaliate against [his] son, Mario Garafola, who
was indicted in the Eastern District of New York . . . ." (A.
84.)

On August 2, 2005, more than a month before the petitioner
signed his declaration in support of his motion to withdraw his
plea, his son was sentenced to thirty-six months imprisonment on
the indictment in the Eastern District of New York. (Criminal
Cause for Sentencing, United States v. Garafola, No. 04 Cr. 732
(E.D.N.Y. Aug. 2, 2005), ECF No. 68.)  Judge Casey denied
Garafola's motion to withdraw his plea on April 13, 2006.
United States v. Garafola, No. 02 Cr. 743, 2006 WL 963878, at *5
(S.D.N.Y. Apr. 13, 2006).  Judge Casey first rejected Garafola's
claim that there was no factual basis for the portion of his
guilty plea relating to the Garofalo murder because he did not
allocute to having the intent to cause Garofalo's death.  Id. at
*3.  Judge Casey found that the claim was "without merit"
because the "allocution, taken together with all the other facts
the Court may consider in its analysis, is sufficient to find a
factual basis for the plea." Id. (citation omitted).  Judge
Casey also noted that the petitioner's counsel, Mr. Guay, stated
during the plea hearing that he had no objection to the legality

of the plea.  Id.  In light of these facts, Judge Casey could
not "imagine how [the petitioner] caused Garofalo's death, but
did so 'unintentionally.'"  Id.  Accordingly, based on all the
facts before him, Judge Casey found that "a factual basis for
the plea exists."  Id.

Turning to Garafola's post hoc claim of factual innocence,
Judge Casey rejected the claim.  Id. at *3-4.  Judge Casey noted
that the petitioner had waited nearly a year after his plea to
claim innocence, "which casts suspicion on the validity of the
claim."  Id. at *4.  Judge Casey rejected the petitioner's
"self-serving" claim that he had delayed out of fear that the
Government would retaliate against the petitioner's son, Mario
Garafola.  Id.  In Judge Casey's view:

> [Garafola] offers no reason why his innocence would
> foment retaliation against his son from the
> Government, particularly if he discovered his own
> innocence before his trial began.  Nor does he point
> to the moment when his innocence was realized.  The
> most likely reason for the late withdrawal is exactly
> the "change of heart" prompted by a "reevaluation of
> either the Government's case against him or the
> penalty that might be imposed" that is forbidden under
> the law of this Circuit.

Id. (citation omitted).  Judge Casey also noted that the
petitioner allocuted to the Garofolo murder using essentially
the same words he had used to allocute to the other racketeering
acts, including the Gravano murder conspiracy, yet the
petitioner did not claim a lack of understanding as to those

9

counts, or claim that those words were "overly legal or abstract." Id.

Finally, Judge Casey found that withdrawal of the petitioner's plea would "substantially prejudice the Government." Id. at *5. Judge Casey also denied the motion to withdraw the guilty plea to Count One, Racketeering Act Five. Id. The petitioner contended that he did not admit that the extortion scheme resulted in the death of Frank Parasole, and that death should not be used to enhance the petitioner's sentence. Id. Judge Casey held that those arguments should be raised at sentencing, particularly given that the petitioner had already stipulated to a life sentence in the Plea Agreement. Id.

This Court, to which this case was reassigned after Judge Casey's death, sentenced the petitioner on September 5, 2007. Mr. White and Mr. Guay represented the petitioner. The petitioner objected to the Pre-Sentence Report regarding the factual basis for the Garofalo murder charge and the murder of Frank Parasole as well as to the upward enhancements for being an organizer or leader of a construction extortion conspiracy and an organizer or leader of the conspiracy to murder Salvatore Gravano. (Sentencing Hr'g Tr., Sept. 5, 2007, United States v. Garafola, No. 02 Cr. 743 (S.D.N.Y. Sept. 21, 2007), ECF No. 348 ("Sentencing Hr'g Tr.") at 13.) This Court found that there was

10

insufficient evidence for the murder of Parasole and therefore
did not rely on it for purposes of sentencing. (Sentencing Hr'g
Tr. at 14-15.)  This Court, however, overruled the petitioner's
objection regarding the Garofalo murder, finding that "the
evidence that Judge Casey relied upon to support the plea [was]
more than sufficient to find by more than a preponderance of the
evidence that the [petitioner] committed . . . the murder of
Edward Garofalo." (Sentencing Hr'g Tr. at 16.)  This Court did
not address the petitioner's other objections to the Pre-
Sentence Report because the contested enhancements would not
augment the petitioner's sentence; the Court sentenced the
petitioner solely on the basis of Racketeering Act Two—the
murder of Edward Garofalo. (Sentencing Hr'g Tr. at 17.)
Although the petitioner stipulated to a life sentence in the
Plea Agreement, the Court gave a three-level reduction in the
offense level, without objection from the Government, for
acceptance of responsibility. (Sentencing Hr'g Tr. at 17-18.)
This resulted in a Guidelines Sentencing Range of 360 months to
life. (Sentencing Hr'g Tr. at 18.)  The Court sentenced the
petitioner principally to 360 months imprisonment. (Sentencing
Hr'g Tr. at 18-19.)

     The petitioner appealed his conviction to the United States
Court of Appeals for the Second Circuit.  He argued that he
should have been allowed to withdraw his plea because there was

an insufficient factual basis for the plea, his plea was not knowing and voluntary, and because he maintained his innocence in the Garofalo murder.  (Gov't Mem. Opp. Ex. D 12-23.)  The Court of Appeals held that Judge Casey did not abuse his discretion by denying Garafola's motion to withdraw his plea. See United States v. Garafola, 292 F. App'x 138, 139-40 (2d Cir. 2008) (Summary Order).  The Court found "no error in Judge Casey's determinations that there was a sufficient factual basis" for the plea, which was "amply supported in the record including [the petitioner's] own statements." Id. at 139.  The Court of Appeals also found that Judge Casey had properly concluded that the eleven-month delay between the entry of Garafola's plea and the initiation of his motion to withdraw that plea would cause significant prejudice to the Government. Id. at 140.  The Court of Appeals found that an examination of the record, including the sealed portions, belied the petitioner's claim of actual innocence of the murder of Edward Garofalo.  Id.

The petitioner now challenges his sentence on three grounds: first, the petitioner alleges that his trial counsel, Mr. Guay, was ineffective because he advised the petitioner to plead guilty to crimes he was not guilty of even though the petitioner allegedly told his attorney he was innocent.  The petitioner alleges that his attorney failed to investigate the

petitioner's claim of innocence and failed to argue for a downward departure based on the harsh conditions of pre-trial confinement.  Second, the petitioner alleges that the Government was responsible for prosecutorial misconduct for prosecuting the petitioner without a sufficient factual basis and for violating the terms of the Plea Agreement.  Third, the petitioner claims that Judge Casey abused his discretion in failing to recuse himself from the case and for accepting the guilty plea despite an insufficient factual basis for the petitioner's guilt.

## II.

The Government argues at the outset that this Court is precluded from reaching the merits of the petitioner's habeas petition because: (A) the waiver of appeal and collateral attack contained in the Plea Agreement expressly prohibits the petitioner from seeking relief under 28 U.S.C. § 2255; (B) the petitioner procedurally defaulted on the claims he now raises by failing to raise them on direct appeal and has not asserted any "cause" or "prejudice" that would justify such failure; and (C) waived all non-jurisdictional defects when he entered a guilty plea.

## A.

The Court of Appeals for the Second Circuit has repeatedly held that waivers of the right to appeal contained in plea

agreements are valid and enforceable.  See, e.g., United States
v. Lee, 523 F.3d 104, 106 (2d Cir. 2008); United States v.
Morgan, 406 F.3d 135, 137 (2d Cir. 2005); Garcia-Santos v.
United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam);
United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000);
United States v. Salcido-Contreras, 990 F.2d 51, 51 (2d Cir.
1993) (per curiam).  The Court of Appeals has also held that
knowing and voluntary waivers of the right to litigate pursuant
to section 2255 are valid and enforceable.  See Frederick v.
Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir.
2002) ("There is no general bar to a waiver of collateral attack
rights in a plea agreement.") (citation omitted); Garcia-Santos,
273 F.3d at 509 (dismissing section 2255 petition without
reaching merits because waiver in plea agreement was valid and
enforceable); Tremblay v. United States, No. 08 Civ. 7030, 2009
WL 1055007, at *8 (S.D.N.Y. Apr. 20, 2009) ("When a defendant
signs a plea agreement containing a waiver of the right to file
a habeas petition, the waiver is enforceable provided that the
plea agreement was 'entered into knowingly and voluntarily, and
with awareness of his waiver of . . . collateral attack.'")
(quoting Garcia-Santos, 273 F.3d at 508)).

       The circumstances under which the Court of Appeals has
declined to enforce waivers of appellate rights are very

                                14

limited.  As the Court of Appeals noted in <u>Gomez-Perez</u>, the
exceptions include situations:

> when the waiver was not made knowingly, voluntarily,
> and competently, when the sentence was imposed based
> on constitutionally impermissible factors, such as
> ethnic, racial or other prohibited biases, when the
> government breached the plea agreement, or when the
> sentencing court failed to enunciate any rationale for
> the defendant's sentence . . . .

215 F.3d at 319 (internal citations omitted) (collecting cases).
To the extent that a claim of ineffective assistance of counsel
challenges the process by which the plea agreement was entered
into, it can survive the waiver provision in a plea agreement.
<u>Parisi v. United States</u>, 529 F.3d 134, 138 (2d Cir. 2008).
However, "[t]o raise a claim despite a guilty plea or appeal
waiver, the petitioner must show that the plea agreement was not
knowing and voluntary, because the advice he received from
counsel was not within acceptable standards."  <u>Id.</u> (internal
quotation marks and citations omitted).  The Court of Appeals
explained that, "[a]n ineffective assistance of counsel claim
survives the guilty plea or the appeal waiver only where the
claim concerns the advice [the defendant] received from
counsel."  <u>Id.</u> (internal quotation marks and citation omitted)
(alteration in original).

In this case, there are no plausible bases to overcome the
petitioner's waiver of the right to bring a 2255 motion for his
ineffective assistance of counsel and prosecutorial misconduct

claims.  Judge Casey found that the plea was knowing and voluntary and that finding was affirmed on appeal.  As part of the plea allocution, the petitioner specifically affirmed that he was aware of the waiver of the right to bring a 2255 petition.  There is no showing on this motion that the waiver was not knowing and voluntary.

The petitioner does raise a claim of ineffective assistance of counsel but that claim is based on the petitioner's allegation that his counsel was ineffective in failing to investigate his claim of innocence and in urging him to plead guilty despite his claim of innocence.  To the extent that this claim challenges the knowing and voluntary nature of the petitioner's plea, and is therefore not barred, it has no merit. Judge Casey already found, and the Court of Appeals agreed, that the petitioner's claim of actual innocence of participation in the murder of Edward Garofalo had no merit and, as explained in great detail below, the petitioner has failed to present any additional support for his claim of innocence and has offered no credible basis for his claim of ineffective assistance of counsel.

The petitioner also argues that the waiver in the Plea Agreement should not be enforced because the government breached the Plea Agreement by not fulfilling its alleged promise to recommend no jail-time for the petitioner's son Mario.  (Pet'r's

16

Mem. ¶¶ 34-35, 39-40; Pet'r's Reply Br. ¶ 53.)  A breach of a
plea agreement by the Government can be grounds for setting
aside a waiver provision.  See United States v. Rosa, 123 F.3d
94, 98 (2d Cir. 1997) (citing United States v. Gonzalez, 16 F.3d
985, 990 (9th Cir. 1993)).  The petitioner, however, cannot
point to any provision in the Plea Agreement that would suggest
that the Government had an obligation respecting Mario Garafola.
Indeed the petitioner concedes as much but argues that
"consideration" for Mario was an underlying condition to the
petitioner's guilty plea and that this condition was simply
"known to various parties at the time . . . ."  (Pet'r's Reply
Br. ¶ 38.)  This unsupported assertion is contrary to the
statements made under oath by the petitioner during his plea
allocution and to the express terms of his Plea Agreement, which
provided that there were no additional promises or
understandings other than those expressly stated in the Plea
Agreement and that the Plea Agreement only bound the United
States Attorney's Office for the Southern District of New York.
(See A. 60-61, 72.)  The statements made by the petitioner
during his plea allocution are persuasive because he does not
offer credible reasons that would justify departing from their
apparent truth.  See United States v. Gonzalez, 970 F.2d 1095,
1101 (2d Cir. 1992); see also Brown v. Allen, No. 08 Civ. 5795,
2010 WL 1459189, at *3 (S.D.N.Y. Apr. 12, 2010).

Moreover, in his declaration dated September 12, 2005, in support of his motion to withdraw partially from his guilty plea, the petitioner never asserted that the Government had breached the agreement by failing to recommend no jail time for his son Mario in connection with the indictment in the Eastern District of New York.  This would have been a glaring omission— if it were true—in view of the fact that his son had already been sentenced the month before in the Eastern District of New York.  Further, in his motion for partial withdrawal of his guilty plea, the petitioner relied on the far less persuasive argument, rejected by Judge Casey, that he failed to bring his motion earlier because he feared retaliation against his son, not that the Government had made any promise to him about his son.

The petitioner, supported by his wife, also alleges that Mr. Guay promised that if he pleaded guilty, he would "probably end up on life time parole." (E. Garafola Aff. ¶ 15, Apr. 6, 2010; F. Garafola Aff. ¶ 9, Apr. 6, 2010.)  These assertions are entitled to no weight because they are contradicted by the explicit Plea Agreement in which the petitioner agreed to accept a sentence of life imprisonment, without even the ability to argue for any downward departures or adjustments.  The statements are also contrary to the provisions of the Plea Agreement that recited that there were no promises other than in

18

the Agreement.  Moreover, Judge Casey explicitly told the petitioner during the plea allocution that "parole has been abolished and that if you are sentenced to any period of imprisonment, you will be required to serve the entire term . . . ."  (A. 72.)  Further, it would be incredible that, if the petitioner were promised any period of "life-time parole," no one suggested such a sentence and the petitioner raised no objection at his sentencing or during his appeal to the sentence of 360 months.

Finally, the petitioner's claim that Judge Casey should have recused himself survives the Plea Agreement's waiver provision.  See United States v. Barreras, No. 10 3315 Cr., 2012 WL 3659811, at *1 (2d Cir. Aug. 28, 2012) (Summary Order).  In Barreras, the petitioner pleaded guilty pursuant to a plea agreement.  Id.  The plea agreement, like the Agreement in this case, waived the petitioner's right to appeal "any sentence within or below the Stipulated Guidelines Range."  Id.  The Court of Appeals for the Second Circuit held that because the plea agreement only barred a challenge to "any sentence" and not of "the underlying conviction," the petitioner could challenge the district judge's refusal to recuse himself.  Id. Nonetheless, although the petitioner's argument that the trial judge abused his discretion may survive the Plea Agreement, as

discussed below, it is procedurally barred, barred by the petitioner's guilty plea, and without merit.

Because the petitioner knowingly and voluntarily entered into the Plea Agreement and because this Court sentenced the petitioner to a term less than the agreed-to life-sentence, the waiver provision bars consideration of the petitioner's claims except for the claim that Judge Casey abused his discretion in failing to recuse himself, and, to the extent it attacks the knowing and voluntary nature of his plea, the claim of ineffective assistance of counsel.

### B.

The Government also argues that the petitioner's claims are procedurally barred because the claims were not raised on direct appeal.  Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, "he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted." De Jesus v. United States, 161 F.3d 99, 102 (2d Cir. 1998) (citations omitted).

In his direct appeal from his conviction, in which he was represented by Mr. White, the petitioner failed to raise any of the claims of ineffective assistance of trial counsel,

prosecutorial misconduct, and judicial misconduct that he now seeks to raise in this petition.  The sole issue raised on appeal was the claim that "[t]he defendant should have been permitted to withdraw his guilty plea, in part, because there was no factual basis for that plea, he maintains his innocence of the charge of murdering Edward Garofalo, and the plea was not knowing and voluntary."  (Def.-Appellant's Br. i, Gov't Mem. Opp. Ex. D.)  The petitioner was represented by Mr. White, both in connection with his motion to withdraw his guilty plea, in part, and on his appeal from the conviction.  Because the petitioner does not allege that Mr. White's representation was ineffective, Mr. White's failure to raise the current claims on appeal cannot constitute "cause" to overcome the petitioner's procedural default.[1]  See Murray v. Carrier, 477 U.S. 478, 488 (1986).  Moreover, while the petitioner argues that there is newly available exculpatory material that was unavailable to his trial counsel, this material cannot constitute sufficient "cause" to overcome the procedural default because, as the petitioner concedes, much of the material was previously

---

[1] As discussed below, the petitioner has alleged in an amendment to his petition that Mr. White was ineffective with respect to certain arguments relating to the Sentencing Guidelines calculation.  Those allegations against Mr. White are without merit and, in any event, have nothing to do with the claims in the petition.

available and relied on by his appellate counsel, Mr. White. (Pet'r's Reply Br. ¶ 5; Pet'r's Mem. ¶ 98.)

In the alternative, the petitioner argues that he was actually innocent of the murder of Garofalo and that this claim of actual innocence overcomes his procedural default. (Pet'r's Reply Br. ¶¶ 46, 57.) "To establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotation marks and citations omitted); see also Rivas v. Fischer, 687 F.3d 514, 539-40 (2d Cir. 2012); Freeman v. United States, Nos. 09 Civ. 4087, 02 Cr. 150, 2010 WL 4026067, at *2 (S.D.N.Y. Oct. 14, 2010). This is a "demanding" standard "and permits review only in the extraordinary case." House v. Bell, 547 U.S. 518, 538 (2006) (internal quotation marks and citation omitted).

To support his claim of actual innocence the petitioner relies on the nearly identical arguments that he proffered in support of his motion to withdraw his guilty plea in part. Those arguments were rejected by Judge Casey in denying the motion and by this Court at the time of sentence. The Court of Appeals likewise rejected the claims of actual innocence.

In his declaration in support of the motion to withdraw his guilty plea in part, the petitioner admitted that he spoke with

Gravano about the murder of Edward Garofalo and that he was
present when the murder plan was discussed.  (A. 83.)  He also
admitted that Frank Fappiano and Joey D'Angelo, the shooters,
were to be driven by a third person to the scene of the
shooting.  Gravano assigned the petitioner the role of driving a
"crash car" which was to be parked close to the scene.  (A. 83.)

　　　The evidence presented at the 2004 trial of Peter Gotti and
Thomas Carbonaro was consistent with, and added details to these
admissions.  The petitioner submitted portions of the testimony
of Fappiano at the Gotti/Carbonaro trial as an exhibit to this
petition.  (See Pet'r's Mot. Ex. B ("2004 Tr.").)  Fappiano
testified that the petitioner was present for the meeting where
Gravano told the participants in the murder what their roles
were to be.  The petitioner was to call his cousin Edward
Garofalo on the phone and then drive a "crash car" to deter the
police, if necessary, if they pursued the shooters.  (2004 Tr.
785-86.)  On the day of the shooting, the petitioner met with
the rest of the team at a social club.  (2004 Tr. 787.)  He was
present when the shooters cleaned the guns and bullets to be
used in the shooting.  (2004 Tr. 787-89.)  The group left and
the shooters shot Edward Garofalo when he left his house.  (2004
Tr. 792.)  The next day, the team, including the petitioner, met
with Gravano who congratulated them and told them they had done
a good job.  (2004 Tr. 795.)

The petitioner argues that he did not position his car
precisely at the appointed location he was directed to, but this
does not negate his participation in the murder.  The same
argument was made in his motion to withdraw his guilty plea and
was insufficient.  (See A. 83.)  The petitioner does not deny
that he drove a "crash car," only that he parked at precisely
the right location.  The petitioner also relies on the testimony
of Fappiano on August 10, 2005, in the trial of John Gotti.
(See Pet'r's Mot. Ex. A ("2005 Tr.").)  At that trial, with
regard to the "crash car" that the petitioner was to drive in
connection with the murder of Edward Garofalo, Fappiano
testified that he did not see the petitioner at the scene and
does not know if he even showed up.  (2005 Tr. 617-19.)  This
testimony does not undercut that the petitioner parked his
"crash car" nearby, which is supported by the sealed portions of
Judge Casey's decision.

The petitioner also alleges that he did not in fact make a
phone call to lure Edward Garofalo out of his house.  The
petitioner made the same allegation in his motion to withdraw in
part his plea.  (A. 83.)  Indeed the petitioner relies on the
very same evidence he presented on the motion to withdraw his
plea.  He relies on his denial that he made the call, together
with an FBI interview memo of an unnamed source in May, 2003.
That interview memo states that in the years following the

murder, "Garafola admitted his involvement in the murder," but the petitioner said that another person "lured [Garofalo][2] out of the house by making an appointment with him."  (Pet'r's Mot. Ex. E.)  This hearsay self-serving statement was ineffective to negate the petitioner's involvement in the murder at the time of his motion to withdraw his guilty plea in part, and remains so. It does not appear that Judge Casey relied on the petitioner's call to Garofalo as necessary to establish his participation in the murder.  See Garafola, 2006 WL 963878, at *3-5.  While the petitioner alleges that he is innocent of the murder of Edward Garofalo, as he did in the motion to withdraw his guilty plea, this conclusory allegation is insufficient.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) (The petitioner's "[s]olemn declarations in open court carry a strong presumption of verity [and] [t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .").

      The facts in the record, including the petitioner's admissions at his guilty plea, the transcripts presented in the

---

[2] The original FBI interview memo incorrectly indicates that the informant stated that another person "lured GARAFOLA out of the house" (Pet'r's Mot. Ex. E.), rather than Garofalo.  This is plainly an error because it makes no sense in the context of the informant's discussion of the circumstances surrounding the murder of Garofalo, who was indeed lured out of his home. Neither side has argued that Garafola was ever lured out of his house. The error will be ignored, and Garofalo will be substituted for "GARAFOLA" for the purposes of these motions.

petition, and the sealed portions of Judge Casey's opinion are sufficient to reject the petitioner's claim of innocence. Indeed, the petitioner has presented nothing to undercut the Court of Appeals conclusion: "Based on our examination of the record, including the sealed portions of the District Court's opinion, we conclude that Judge Casey correctly rejected [the petitioner's] claim of actual innocence." Garafola, 292 F. App'x at 139.

Because the petitioner is unable to establish "cause and prejudice" or "actual innocence," the petitioner is precluded from raising his judicial abuse of discretion and prosecutorial misconduct claims in his § 2255 motion. See Suh v. Pierce, 630 F.3d 685, 690-91 (7th Cir. 2011) (holding judicial recusal claim barred because of procedural default); Tai-Nan v. Wilson, 336 F. App'x 256, 262 (3d Cir. 2009) (same); Ferguson v. Sec'y for the Dep't of Corr., 580 F.3d 1183, 1218-20 (11th Cir. 2009) (same); Stanford v. Parker, 266 F.3d 442, 460-61 (6th Cir. 2001) (same); Wedra v. Lefevre, 988 F.2d 334, 344 (2d Cir. 1993) (holding prosecutorial misconduct claim barred by procedural default); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991) ("[the] petitioner's forfeiture in state court of his . . . prosecutorial misconduct claim[] bars him from litigating the merits of [that] claim[] in federal habeas proceedings, absent a

showing of cause for the procedural default and prejudice resulting therefrom.") (citation omitted).[3]

However, procedural default would not preclude the petitioner from raising ineffective assistance of trial counsel on the current petition because the Supreme Court has held that a claim of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003); see also Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010). Thus, the petitioner's failure to raise the alleged ineffective assistance of his trial counsel cannot operate as a procedural bar to raising this claim in his § 2255 motion.

_____

[3] Although these cases all involve collateral attacks on state court judgments under 28 U.S.C. § 2254, and procedural defaults for failures to raise claims on direct appeal in state court, the "cause and prejudice" standard for procedural default is the same for § 2254 and § 2255 petitions.  See Reed v. Farley, 512 U.S. 339, 355 (1994) ("collateral review of procedurally defaulted claims is subject to same 'cause and actual prejudice' standard, whether the claim is brought by a state prisoner under § 2254 or a federal prisoner under § 2255") (citing and explaining United States v. Frady, 456 U.S. 152, 167-68 (1982)); Tapia-Garcia v. United States, 53 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) ("The case law is crystal-clear . . . that the cause and prejudice standard applies in § 2254 and § 2255 proceedings to claims that a prisoner could have brought on direct appeal but did not.") (citations omitted).  Therefore, the holdings of these cases, that claims of prosecutorial misconduct and failure to recuse may be barred on grounds of procedural default, apply equally to § 2254 and § 2255 petitions.

C.

It is well-established that an intelligent and voluntary guilty plea waives all non-jurisdictional defects that occurred in prior stages of the litigation. See United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003) (per curiam); see also United States v. Curtis, No. 08 Cr. 183, 2010 WL 2106168, at *5 (S.D.N.Y. May 19, 2010). The petitioner's claim of alleged prosecutorial misconduct is a non-jurisdictional argument that was waived by the petitioner's guilty plea. See United States v. Lawson, No. 99 1046, 2000 WL 232282, at *1 (2d Cir. Feb. 28, 2000) (Summary Order) (prosecutorial misconduct claim is a non-jurisdictional defect that is waived by a guilty plea) (citation omitted); United States v. Cain, 134 F.3d 1345, 1352 (8th Cir. 1998) ("by pleading guilty, [the petitioner] waived arguments of prosecutorial misconduct and associated district court error in the cases before us.").

Furthermore, the petitioner's claim that Judge Casey abused his discretion by failing to recuse himself was also waived by the petitioner's guilty plea. See United States v. Patti, 337 F.3d 1317, 1322 (11th Cir. 2003) (concluding that a defendant waived right to appeal denial of motion for a judge's recusal under 28 U.S.C. § 455(a) by entering an unconditional guilty plea and collecting cases); cf. United States v. Brinkworth, 68 F.3d 633, 638 (2d Cir. 1995) (allowing appeal of denial of

recusal motion under 28 U.S.C. § 455(a) despite unconditional
guilty plea where trial judge also denied request for
conditional guilty plea).  In this case, unlike Brinkworth, not
only did the petitioner not make a motion to recuse the trial
judge that was subsequently denied, the petitioner also failed
to request a guilty plea conditioned on his ability to appeal
the denial of the motion to recuse.  Without satisfying those
prerequisites, Brinkworth is inapplicable and the petitioner
cannot contest Judge Casey's failure to recuse himself sua
sponte.  See United States v. Schoenfeld, 78 F. App'x 745, 747
(2d Cir. 2003) (Summary Order) (limiting Brinkworth to
situations where the same trial judge who denies a recusal
motion also denies a request for a conditional plea).[4]

Finally, the petitioner's claim that his counsel was
ineffective, is barred except to the extent it attacks the
voluntary and intelligent character of the guilty plea.  See
Parisi, 529 F.3d at 138 ("[a]n ineffective assistance of counsel
claim survives the guilty plea . . . only where the claim
concerns the advice [the petitioner] received from counsel.")
(internal quotation marks and citation omitted); United States

---

[4] While some courts have found that a petitioner can appeal the
denial of a motion to recuse under 28 U.S.C. § 455(a) despite
entering a guilty plea, see, e.g., United States v. Chantal, 902
F.2d 1018 (1st Cir. 1990) (cited approvingly in Brinkworth, 68
F.3d at 638), in this case the petitioner made no such motion
before the trial court.

v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) (defendant who pleads guilty unconditionally with counsel may "only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards" (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  As discussed above with regard to the waiver in the Plea Agreement, to the extent the petitioner's claim challenges the knowing and voluntary nature of his guilty plea, it is without merit.

In sum, the petitioner's voluntary and intelligent waiver of the right to appeal or collaterally attack his sentence as agreed in his Plea Agreement precludes the petitioner's claims except for the claim regarding Judge Casey's failure to recuse sua sponte and, to some extent, his claim of ineffective assistance of counsel.  Furthermore, the petitioner's failure to raise the claims he now asserts procedurally bars the petitioner's claims except for his claims of ineffective assistance of trial counsel.  Finally, except to the extent that his ineffective assistance of counsel claim challenges the voluntary and knowing nature of his guilty plea, all of the petitioner's claims are non-jurisdictional defects that were waived by the petitioner's guilty plea.

## III.

In any event, even putting aside the procedural obstacles, each of the petitioner's claims is without merit.

### A.

A claim that a guilty plea was involuntary due to ineffective assistance of counsel must be evaluated under the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  See Hill v. Lockhart, 474 U.S. 52, 57 (1985) (Strickland analysis applies in the context of guilty pleas); see, e.g., Chang v. United States, 250 F.3d 79, 84 (2d Cir. 2001); Hernandez v. United States, 280 F. Supp. 2d 118, 122 (S.D.N.Y. 2003).  To prevail on a claim of ineffective assistance of counsel, the petitioner must show both (1) that his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) that counsel's deficient performance was prejudicial to the petitioner's case.  See Strickland, 466 U.S. at 687; Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

To satisfy the first prong, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687.  There is a "strong presumption" that defense counsel's conduct fell within the

31

broad spectrum of reasonable professional assistance.  Kimmelman

v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466

U.S. at 689).  Moreover, "[i]n assessing the attorney's

performance, a reviewing court must judge [counsel's] conduct on

the basis of the facts of the particular case, viewed as of the

time of counsel's conduct, and may not use hindsight to second-

guess [counsel's] strategy choices."  Mayo v. Henderson, 13 F.3d

528, 533 (2d Cir. 1994) (internal quotation marks and citations

omitted); see also Strouse v. Leonardo, 928 F.2d 548, 553 (2d

Cir. 1991); United States v. Jones, 918 F.2d 9, 11-12 (2d Cir.

1990) (per curiam).

To meet the second prong of the Strickland test, the

petitioner must show that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Strickland, 466 U.S. at 694.

Where a petitioner challenges a guilty plea on the basis of

alleged ineffective assistance of counsel, the defendant must

show that, "there is a reasonable probability that, but for

counsel's errors, [the petitioner] would not have pleaded guilty

and would have insisted on going to trial."  United States v.

Couto, 311 F.3d 179, 187 (2d Cir. 2002) (citation omitted),

abrogated on other grounds by Padilla v. Kentucky, 130 S. Ct.

1473, 1494 (2010); see also Hill, 474 U.S. at 59.  In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different. See United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997) (citation omitted).

The petitioner alleges that his trial counsel, Mr. Guay, did not adequately investigate the petitioner's claimed lack of involvement in the Garofalo murder and failed to appreciate that the plea allocution lacked a sufficient evidentiary basis. These arguments plainly lack merit given that the Court of Appeals has held that the plea allocution was sufficient and that Judge Casey did not commit error in rejecting the petitioner's claim of actual innocence.  Garafola, 292 F. App'x at 139-40.  Moreover, as discussed above, the petitioner's arguments on the current motion do not support his claim of actual innocence, and his counsel cannot be faulted for having failed to uncover a non-existent defense.

The petitioner argues that his counsel was ineffective in advising him to plead guilty to a charge that called for a life sentence because there "was no strategic reason to have [the petitioner] enter the plea as he received no benefit, still agreed to the maximum sentence (Life), and was known by defense

33

counsel to be innocent of the murders." (Pet'r's Mem. ¶ 90.)[5]
The petitioner also argues that, at a minimum, this plea should
have been a plea pursuant to North Carolina v. Alford, 400 U.S.
25 (1970). (Pet'r's Mem. ¶ 87).

The petitioner cannot demonstrate that he was prejudiced by
Mr. Guay's failure to seek an Alford plea because there is no
showing that such a plea would have been acceptable to both the
Government and the Court. See United States v. Armstrong, 106
F. App'x 601, 603 (9th Cir. 2004). Indeed, the petitioner
concedes that "the Government was adamant" that in order to make
a plea deal he would have to admit to, among other things, the
Garofalo murder. (Pet'r's Mem. ¶¶ 38-39.)

The petitioner also appears to allege that Mr. Guay did not
sufficiently review the allocution with the petitioner prior to
the plea proceeding and as a result the petitioner did not
understand what acts he was pleading guilty to. (Pet'r's Mem.
¶¶ 88-89.) This assertion wholly contradicts the petitioner's
previous sworn statements in court at the plea proceeding—that
the petitioner understood the charges against him and that he
had adequate time to discuss the charges and the Plea Agreement
with his attorney (A. 65, 67)—and therefore can be summarily

---

[5] This argument contradicts the petitioner's arguments that he
pleaded guilty so that his son would not be sentenced to prison
and because he was assured he would receive life-time parole.
But those arguments are, in any event, not credible and are
refuted by the record.

dismissed.   See Santana v. United States, No. 04 Civ. 1111, 2005
WL 180932, at *5 (S.D.N.Y. Jan. 26, 2005) ("Petitioner simply
cannot carry his burden of showing ineffectiveness of counsel on
the basis of a self-serving, post hoc assertion that contradicts
a number of his sworn, in-court statements."); see also Giraldo-
Perez v. United States, No. 08 Civ. 7529, 2009 WL 1492222, at *4
(S.D.N.Y. May 28, 2009).   Moreover, the allegation is contrary
to the findings of Judge Casey, which were affirmed on appeal,
that the plea was knowing and voluntary.   Garafola, 292 F. App'x
at 139.

     The petitioner also alleges that Mr. Guay should have
argued for a downward departure in connection with the
petitioner's sentencing based on the duration and conditions of
his confinement at the MCC.   (Pet'r's Mem. ¶¶ 99-107.)
According to the petitioner, the MCC has inadequate exercise
facilities, medical treatment, and educational opportunities,
and there is an overly restrictive visitation policy.   (Pet'r's
Mem. ¶¶ 69-71.)

     As an initial matter, the petitioner was primarily
represented by Mr. White throughout sentencing and the
sentencing submissions were made by Mr. White.   In his main
petition, the petitioner does not challenge Mr. White's
representation.   Liberally construing the petitioner's motion,
see Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001), to

allege Mr. White's ineffectiveness, the claim is nonetheless

without merit.  The Plea Agreement stipulated to a Guidelines

sentence of life imprisonment and precluded both the Government

and the petitioner from seeking a departure or adjustment from

this sentence.  (A. 58.)  It cannot be said that Mr. White

rendered ineffective assistance of counsel by adhering to the

provisions of the Plea Agreement.  In any event, the alleged

conditions at the MCC do not approach those that have been

recognized as supporting a downward departure in sentencing.

See generally United States v. Mateo, 299 F. Supp. 2d 201, 207-

09 (S.D.N.Y. 2004) (collecting cases).  The petitioner,

therefore, cannot establish prejudice under Strickland because

there is not a "reasonable probability" that the sentence

rendered would have been different had Mr. White raised the

conditions at the MCC to this Court at sentencing.[6]

---

[6] The petitioner also claims at various points in his papers that
he received advice from Jean Garaziano, an attorney whom he
claims, was engaged in improprieties with co-defendant Fappiano.
(Pet'r's Mem. ¶¶ 18-26.)  However, the petitioner does not list
any failure by Garaziano as one of the bases for this petition.
In any event, the docket does not reflect that Mr. Garaziano
ever entered an appearance for the petitioner and there is no
indication that she had anything to do with the petitioner's
guilty plea, sentence, or motion to withdraw in part his guilty
plea.  The petitioner has therefore failed to make any credible
claim that he received ineffective assistance of counsel from
Ms. Garaziano or that he was prejudiced in any way by any such
assistance.
    The petitioner also alleges that one of his attorneys,
Michael Rosen, was removed for a conflict of interest, after a
Curcio hearing before Judge Casey.  (Pet'r's Mem. ¶ 16, 25.)  He

**B.**

The petitioner alleges that the Government committed prosecutorial misconduct because the Government was aware that the evidence against the petitioner for the murder of Garofalo was insufficient. (Pet'r's Mem. ¶¶ 113-118.)  In light of the fact that Judge Casey held, and the Court of Appeals affirmed, that there was a sufficient factual basis for the petitioner's plea of guilty to the Garofalo murder, it could not have been misconduct for the Government to prosecute the petitioner on that charge.  Additionally, Fappiano's testimony—that the petitioner was involved in the murder of Garofalo from the beginning although Fappiano did not actually see the petitioner at the murder scene—neither contradicts the petitioner's guilty plea nor diminishes the basis for the Government's prosecution.

The petitioner next argues that the Government impermissibly strengthened its bargaining position against the petitioner by indicting the petitioner's son, Mario, on related charges and that this constituted prosecutorial misconduct. (Pet'r's Mem. ¶¶ 119-22).  Mario Garafola, however, was indicted in the Eastern District of New York and the petitioner points to

---

claims that this removal disrupted the continuity of his defense.  (Pet'r's Mem. ¶¶ 14-15.)  But the petitioner fails to explain how the prior representation by Mr. Rosen supports a claim of ineffective assistance of counsel in connection with his plea and sentence.  These arguments therefore are not a basis for granting the petition.

no evidence suggesting that the United States Attorney's Offices
for the Eastern and Southern Districts of New York cooperated in
devising a scheme to pressure the petitioner into pleading
guilty to the charges that were pending in the Southern
District.  In fact, the Plea Agreement expressly states that it
is only binding on the United States Attorney's Office for the
Southern District of New York.  (A. 60.)  In any event, it is
not misconduct for the Government to indict a family member of a
criminal defendant so long as there is probable cause for
believing that the family member committed the alleged offense.
See United States v. Marquez, 909 F.2d 738, 741-42 (2d Cir.
1990); see also Babi v. Laclair, No. 06 Civ. 14204, 2009 WL
1181615, at *12 (S.D.N.Y. Apr. 30, 2009).  The petitioner does
not appear to contest that the Government had probable cause to
indict Mario Garafola and indeed, Mario Garafola eventually
pleaded guilty in the Eastern District case.

The petitioner claims that Judge Casey abused his
discretion by not recusing himself from the case sua sponte and
that the Government committed misconduct for not seeking his
removal.  (Pet'r's Mem. ¶¶ 123-29.)  According to the
petitioner, in or about 2000, two years before the first
indictment in this case, Judge Casey received a complimentary
ticket from Fred Contini to a fundraising dinner event organized
by the Passionists, a Catholic religious order, and this ticket

was allegedly valued at $5,000.[7]  (Pet'r's Mem. ¶¶ 56-59.)  Mr.

Contini later became a Government witness and the Government

planned to call him in its case against the petitioner.  The

petitioner alleges that Fred Contini was overheard to tell some

of the guests at the dinner event that "[i]t's good to have a

Judge in your pocket," apparently referring to Judge Casey's

attendance.  (Pet'r's Mem. ¶ 58.)  The only evidence the

petitioner offers to support any of these allegations is a

report prepared by a private investigator, retained by Mr.

White, which documents unsworn statements made by Morris

"Mickey" Diminno and Mario Garafola.  (Pet'r's Mot. Ex. D.)  The

report does not state that Judge Casey received the

complimentary ticket from Contini or establish the value of this

ticket.[8]  It does state that Contini played a major role in the

fundraising for the event.

    Although the petitioner did not specifically move for

recusal, a federal judge is obligated to take such action if the

circumstances indicate that the judge's "impartiality might

reasonably be questioned."  28 U.S.C. § 455(a); <u>United States v.</u>

<u>Bayless</u>, 201 F.3d 116, 127-30 (2d Cir. 2000).  The appearance of

---

[7] The original trial-counsel retained by the petitioner, Mr.
Rosen, was removed from the case after a <u>Curcio</u> hearing
conducted by Judge Casey revealed that Contini was a former
client of Mr. Rosen's.  (Pet'r's Mem. ¶ 25.)

[8] The report states: "Prominent in attendance [at the dinner] was
Judge Casey who had been gifted a complimentary ticket."
(Pet'r's Mot. Ex. D.)

partiality is created where "'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal,' or alternatively, whether 'a reasonable person, knowing all the facts,' would question the judge's impartiality." United States v. Yousef, 327 F.3d 56, 169 (2d Cir. 2003) (quoting United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992)); see also Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 127-28 (2d Cir. 2003). "[D]isqualification is not required on the basis of remote, contingent, indirect or speculative interests." Bayless, 201 F.3d at 127 (internal quotation marks and citation omitted).

Here, none of the evidence in the record provides a reasonable basis for questioning Judge Casey's impartiality. The evidence shows, at best, that before the petitioner was indicted and at least four-years before the petitioner's guilty plea, Judge Casey received a complimentary ticket for and attended a religious organization's benefit dinner.  The event was chaired by Contini and co-chaired by Mario Garafola.  The ceremony occurred prior to any of the legal proceedings concerning the petitioner and there is no evidence, nor is it alleged, that Judge Casey had any further contact with Contini. It would be pure speculation to discern a conflict of interest from these facts.  It is not improper for a federal judge to

40

attend an organization's fund-raising event.  See In re Aguinda,
241 F.3d 194, 202-03 (2d Cir. 2001) ("[n]o reasonable person
would believe that expense-paid attendance at [a seminar funded
by a nonprofit organization that received a small portion of its
funding from the defendant] would cause a judge to be partial,
or appear so, in litigation involving [the defendant] . . . .");
see also Code of Conduct for United States Judges, Canon 4(C)
("A judge may assist nonprofit law-related, civic, charitable,
educational, religious, or social organizations in planning
fund-raising activities"); Committee on Codes of Conduct,
Advisory Op. No. 42 ("a judge may certainly participate in . . .
fund-raising by contributing funds to a religious
organization.").

The petitioner makes the erroneous assumption that because
Mr. Rosen's former representation of Contini was a conflict of
interest to Mr. Rosen's continued representation of the
petitioner, any prior contact between Judge Casey and Contini
would also create a serious conflict of interest. (See Pet'r's
Mem. ¶ 124.)  This reasoning is plainly incorrect.  An
attorney's former representation of a government witness on a
substantially related matter can create a serious conflict of
interest because the attorney may be limited in the attorney's
ability to impeach the witness.  See Ciak v. United States, 59
F.3d 296, 304-05 (2d Cir. 1995), abrogated on other grounds by

Mickens v. Taylor, 535 U.S. 162 (2002); N.Y. Rules Prof'l
Conduct R. 1.7 cmt. 6; see also United States v. Scarpaci, 731
F. Supp. 2d 341, 346 (S.D.N.Y. 2010).  The same concern is not
present when a judge is friends with a trial witness; thus, the
mere fact that a judge is an acquaintance of a witness does not
by itself warrant recusal.  See United States v. Nelson, No. 94
Cr. 823, 2010 WL 2629742, at *8 (E.D.N.Y. June 28, 2010)
("[F]riendship between judges and trial actors other than
parties, untainted by any financial interests, should not
generally justify recusal.") (internal quotation marks,
emphasis, and citation omitted); see also Blackwell v. United
States, No. 08 Civ. 168, 2008 WL 1696947, at *2 (S.D. Ohio Apr.
9, 2008) (citing United States v. Dandy, 998 F.2d 1344, 1349
(6th Cir. 1993) (finding recusal unnecessary where judge's
relationship with government witness was that of an
acquaintance)); Bailey v. Broder, No. 94 Civ. 2394, 1997 WL
73717, at *3 (S.D.N.Y. Feb. 20, 1997).  That Judge Casey may
have met a potential government witness years before the
petitioner's guilty plea, without more, did not warrant
mandatory recusal under 28 U.S.C. § 455(a).

      Finally, the petitioner alleges that it was misconduct for
the Government to pursue, and for Judge Casey to accept, a
guilty plea lacking a sufficient factual basis.  This argument
plainly lacks merit because the Court of Appeals upheld Judge

                                42

Casey's finding that the petitioner's plea of guilty to the Garofalo murder had an independent basis in fact.  See Garafola, 292 F. App'x at 139.


## IV.

To support his § 2255 petition, and to overcome a lack of evidence, the petitioner seeks leave of court to conduct discovery pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2255 proceedings.  Specifically, the petitioner seeks FBI records of conversations ("FBI 302's") and the transcripts of the trial testimony of Salvatore Mangravillano and Frank Frappiano from John Gotti's trial; the FBI 302's and transcripts of Dominic Borghese's testimony "at any proceeding [where] he may have discussed [the petitioner];" and an "[i]temized list of these and all other cooperating witnesses that provided evidence, statements, testimony or otherwise discussed [the petitioner] or [the petitioner's] acts."  (Letter Request for Disc. at 1-2, Feb. 8, 2010, ECF No. 5.)  The petitioner filed Proposed Findings of Facts and Conclusions of Law with this Court on May 24, 2010; nearly all of the proposed findings relate to the facts that the evidence hopes to prove through his discovery request.

A petitioner in a habeas corpus proceeding generally does not have a right to discovery unless the petitioner can show

good cause.  See Bracy v. Gramley, 520 U.S. 899, 904 (1997)
(quoting Rule 6(a) of the Rules Governing § 2254 cases); see
also Rossney v. Travis, No. 00 Civ. 4562, 2003 WL 135692, at *12
(S.D.N.Y. Jan. 17, 2003).  Good cause is established where
"specific allegations before the court show reason to believe
that the petitioner may, if the facts are fully developed, be
able to demonstrate that he is . . . entitled to relief."  Drake
v. Portuondo, 321 F.3d 338, 345 (2d Cir. 2003) (quoting Bracy,
520 U.S. at 908-09) (alteration in original).

     The petitioner seeks broad discovery without making
specific allegations that the requested evidence will show
reason to believe that he is entitled to relief.  As discussed
above, this Court is precluded in large part from reaching the
merits of the petitioner's § 2255 petition because the
petitioner knowingly and voluntarily waived the right to
collaterally attack his sentence.  His claims are also barred by
his failure to raise them on appeal and by his guilty plea.  The
petitioner does not allege that the requested evidence will put
into doubt the validity of the waiver.  Furthermore, the
petitioner's request for discovery does not demonstrate how the
requested materials will help show either actual innocence or
"cause and prejudice" for failing to raise his claims on direct
appeal.  In fact, the petitioner's request is so broad that it
is unlikely that the requested evidence even relates to his

claims let alone will show reason to believe that he is entitled
to relief.

In short, the petitioner's request for discovery in support
of his § 2255 motion does not articulate sufficient reasons as
to why this Court should permit the requested discovery; rather,
the petitioner's request constitutes a "fishing-expedition."
See, e.g. Guastella v. United States, Nos. 06 Civ. 2924, 98 Cr.
1325 01, 2009 WL 1286382, at *16 (S.D.N.Y. May 8, 2009); Charles
v. Artuz, 21 F. Supp. 2d 168, 169 (E.D.N.Y. 1998) (citation
omitted).  Accordingly, there is no basis for discovery and the
petitioner's motion is denied.  For the same reasons, the
petitioner's request for Judicial Notice or Summary Judgment
with respect to the Proposed Findings of Fact and Conclusions of
Law is also denied.

To the extent the petitioner's request for discovery could
be construed as a request for an evidentiary hearing, that
request is denied.  The motion and the files and records of the
case conclusively show that the petitioner is entitled to no
relief, therefore no hearing is required.  See Chang, 250 F.3d
at 86 (a district court has discretion to rely on documentary
evidence in deciding habeas petitions, and need not conduct a
"full-blown testimonial hearing" when in-court testimony "would
not offer any reasonable chance of altering [the court's] view
of the facts") (citation omitted); see also 28 U.S.C. § 2255(b);

<u>Ferrell v. United States</u>, No. 08 Civ. 8245, 2011 WL 1496339, at *4 (S.D.N.Y. Apr. 20, 2011).

**V.**

In an amendment to his petition, the petitioner argues that his trial counsel was ineffective in advising him to plead guilty pursuant to a Plea Agreement that incorrectly calculated the Guidelines Sentencing Range for Racketeering Act Two relating to the murder of Edward Garofalo. The petitioner claims that the parties were mistaken in the Plea Agreement, and that the Probation Department was incorrect in the Pre-Sentence Report in concluding that the Base Offense Level for Racketeering Act Two was 43, when in fact it should have been much lower if the Guidelines Sentencing Manual in effect at the time of the murder in August 1990 was used. The petitioner also claims his counsel was ineffective for failing to object to his sentence, which the petitioner alleges was above the statutory maximum. There is no merit to these arguments.

The petitioner argues that his counsel was ineffective for failing to object to his sentence, which he alleges was above the statutory maximum. The petitioner's sentence was within the statutory maximum because the statutory maximum was life imprisonment.

46

The statutory maximum for a violation of 18 U.S.C. § 1962(c) is life imprisonment when one of the predicate felonies carries a maximum term of life imprisonment.  See 18 U.S.C. § 1963(a).  The petitioner faced a maximum statutory penalty of life imprisonment because Racketeering Act Two charged the petitioner not only with conspiracy to murder Edward Garofalo, but also with participating in the actual murder of Edward Garofalo, which is second degree murder under New York State law, and punishable by a maximum sentence of life imprisonment.  See N.Y. Penal Law §§ 125.25, 20.00, and 70.00. The petitioner was appropriately advised in the Plea Agreement, at his guilty plea, and in the Pre-Sentence Report that the maximum statutory penalty for the crime to which he was pleading guilty, which included the murder charged in Racketeering Act Two, was life imprisonment.  (A. 54, 64; PSR ¶ 148.) Therefore, the petitioner faced a maximum penalty of life imprisonment on Count One based on the Racketeering Act Two charge and the petitioner's guilty plea.

The petitioner argues that his plea with respect to Racketeering Act Two was only a plea to conspiracy to commit murder, not a plea to actual murder, and therefore the proper statutory maximum was not life imprisonment.  The petitioner's argument ignores the fact that Racketeering Act Two contained two underlying acts, conspiracy to murder and actual murder.  In

47

his plea allocution, the petitioner specifically admitted to both acts that were charged in Racketeering Act Two: "in or about August 1990, in this District and in the Eastern District of New York, I knowingly and unlawfully conspired with others to murder Edward Garofalo.  About August 8, 1990 I and others did cause this death."  (A. 76.)  The petitioner was charged with and allocuted to the actual murder of Edward Garofalo, which carried a statutory maximum term of life imprisonment.  Because the statutory maximum was proper, the petitioner's counsel was not ineffective for failing to object to the statutory maximum sentence of life imprisonment.  See United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) (per curiam) ("counsel could not therefore have been ineffective for failing to make a motion that would have been futile"); United States v. DiPaolo, 804 F.2d 225, 234 (2d Cir. 1986) (counsel was not ineffective in failing to make an objection that "appears without merit").

The petitioner also argues that the use of the 2002 Sentencing Guidelines Manual to calculate his sentence for his alleged 1990 murder of Garofalo violated the Ex Post Facto Clause, U.S. Const. Art. I, § 9, cl. 3.  The petitioner was indicted on a RICO offense that continued from the 1970s into 2003, therefore the use the 2002 Sentencing Guidelines to calculate the petitioner's sentence was not a violation of the Ex Post Facto Clause.

An Ex Post Facto violation occurs when the application of the Guidelines Manual in effect at the time of sentencing produces a more severe Guidelines range than the use of the Guidelines Manual in effect at the time the offense was committed.  United States v. Broderson, 67 F.3d 452, 456 (2d Cir. 1995).  "Both substantive RICO and RICO conspiracy offenses are continuing crimes,"  United States v. Wong, 40 F.3d 1347, 1366 (2d Cir. 1994) (citations omitted), and the effective Sentencing Guidelines Manual for a RICO charge is not the Guidelines Manual in effect at the time of an underlying racketeering act but the Manual at the time the RICO offense is completed,  see, e.g., United States v. Massino, 546 F.3d 123, 135-36 (2d Cir. 2008) (per curiam) (finding district court correctly applied post-2004 Guidelines to calculate the Base Offense Level for a 1985 attempted murder which was a predicate racketeering act under the RICO conspiracy because the district court properly found the defendant had continued his involvement in the RICO conspiracy beyond 2004).

In this case, although Racketeering Act Two was completed in August 1990, the petitioner was charged with a substantive RICO offense that continued into 2003.  The Indictment charged that the racketeering violation occurred from at least in or about the late 1970s, "up through and including in or about April 2003 . . . ."  (A. 31.)  The petitioner allocuted at his

guilty plea that, "from about the late 1970s to about April of
2003 . . . I knowingly, unlawfully participated together with
others in the conduct of the affairs of a racketeering
enterprise as charged in the indictment." (A. 75-76.)  Because
the RICO offense was a continuing offense that was still being
committed in 2003, the Court appropriately applied the 2002
Sentencing Guidelines Manual to calculate the petitioner's
sentence.  Therefore it was not ineffective assistance of
counsel for the petitioner's attorney to fail to object to the
application of the 2002 Sentencing Guidelines Manual.  See Abad,
514 F.3d at 276; DiPaolo, 804 F.2d at 234.

The petitioner also claims that his counsel was ineffective
for failing to object to his sentence that was allegedly
calculated incorrectly under the Sentencing Guidelines.  The
petitioner was sentenced on September 5, 2007.  The 2006
Guidelines in effect at that time were substantially the same as
the 2002 Sentencing Guidelines in effect at the time of the RICO
offense at issue in this case.[9]  The petitioner's sentence was
properly calculated under both sets of Guidelines.

---

[9] The Guidelines were also the same in relevant part as the 1989
Sentencing Guidelines in effect at the time of the Garofalo
Murder.  Both the petitioner and the Government refer to the
1990 Sentencing Guidelines Manual as the alternative applicable
Manual.  However, at the time Racketeering Act Two was
committed, August 1990, the applicable Guidelines Manual would
have been the 1989 Manual, not the 1990 Manual.  The 1990
Guidelines did not become effective until November 1, 1990.  See

Under Sentencing Guidelines section 2E1.1(a), which has been substantively unchanged from 1989 through 2006, the Base Offense Level for a RICO violation is the greater of 19 or the offense level applicable to the underlying racketeering activity.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2E1.1(a) (2006).  Section 2E1.1 further provides that "[i]f the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used."  Id. cmt. n. 2.  Furthermore, the Guidelines specify that each underlying offense, in this case conspiracy to murder and actual murder under Racketeering Act Two, is to be treated as a separate count of conviction for determining the applicable offense level.  Id. cmt. n. 1.

In this case, the violations underlying Racketeering Act Two were violations of New York Penal Law sections 105.15 (conspiracy in the second degree), 125.25 (second degree murder), and 20.00 (accessorial conduct).  The petitioner incorrectly argues that the analogue to New York second degree murder is federal second degree murder under the Guidelines. However, the most analogous federal offense to New York second degree murder is federal first degree murder.  See United States v. Minicone, 960 F.2d 1099, 1110 (2d Cir. 1992) ("the most

_____

U.S.S.G. (1990).  Therefore, under the petitioner's theory, the applicable Guidelines would have been the 1989 Guidelines.

analogous federal offense [to New York's second degree murder statute] was first degree murder"); Guzman v. United States, 277 F. Supp. 2d 255, 260 (S.D.N.Y. 2003) ("the same conduct that constitutes second-degree murder under New York law also constitutes first-degree murder under federal law.")  Under Sentencing Guidelines section 2A1.1, which has also been in effect without substantive change from 1989 through 2006, the Base Offense Level for first degree murder is 43.  Because 43 is higher than 19, the appropriate Base Offense Level for the RICO violation under section 2E1.1 was 43.  Therefore, the Base Offense Level was correctly calculated in the Pre-Sentence Report and at sentencing, and it was not ineffective assistance of counsel for the petitioner's counsel to fail to object to the Base Offense Level of 43.

The petitioner also argues that because he did not allocute to the actual murder of Garofalo, but only the conspiracy to murder Garofalo, the proper Base Offense Level was the federal offense level analogue for New York conspiracy to murder, not the federal analogue for New York second degree murder.  However, for the reasons explained above, the petitioner was charged with and allocuted to both the conspiracy to murder and the actual murder of Edward Garofalo.  Regardless of the offense level that would result from conspiracy to murder, because the murder of Garofalo resulted in a Base Offense Level of 43, it

was proper to calculate the petitioner's sentence under section
2A1.1.

In summary, the petitioner was charged with and allocuted
to the actual murder of Garofalo.  The petitioner's statutory
maximum for the RICO violation that included the racketeering
act of the murder of Garofalo was life imprisonment.  The
petitioner's Guidelines calculations were properly based on the
2002 Guidelines (which were the same as the 2006 Guidelines in
effect at sentencing), and the Base Offense Level for New York
second degree murder under the 2002 Guidelines (as well as under
the 2006 Guidelines), was 43.  As this Court explained at
sentencing, "[b]ecause [the Base Offense Level for Racketeering
Act Two] is more than nine levels higher than the offense levels
for Racketeering Act Four, the conspiracy to murder Salvatore
Gravano, and Racketeering Act Five, conspiracy to commit
extortion, the [B]ase [O]ffense [L]evel is determined solely on
Racketeering Act Two, the murder of Edward Garofalo."
(Sentencing Hr'g Tr. at 17.)  Therefore, because the
petitioner's sentence was solely based on Racketeering Act Two,
and Racketeering Act Two was correctly calculated with a Base
Offense Level of 43, the petitioner's counsel was not
ineffective for failing to challenge the statutory maximum or
the sentencing calculation.

## VI.

The petitioner has submitted a Motion to Expand the Record to detail his additional medical conditions and to seal those records.  The Court has reviewed the petitioner's medical conditions and there is no question that they are serious. Indeed it was clear that the petitioner had serious medical conditions at the time of his sentence and that any sentence that reasonably reflected the gravity of the petitioner's offense would have serious consequences for the petitioner.  The Court specifically recommended to the Bureau of Prisons that the petitioner be designated to the Federal Medical Center at Fort Devens, Massachusetts, although the petitioner appears to be incarcerated at another facility and has received treatment at a local hospital.

The petitioner argues that this strengthens his claim that the incarceration at the MCC was unusually burdensome on him and that his attorney should have made that argument.  For the reasons explained above, that is not a viable basis to grant the petition.

The motion can also be read as a request to the Court to reduce his sentence because of his current medical condition, but the Court lacks the ability to do so.  Although a sentence may not typically be modified once imposed, "the [C]ourt, upon motion of the Director of the Bureau of Prisons, may reduce the

term of imprisonment . . . if it finds that . . . extraordinary
and compelling reasons warrant such a reduction." 18 U.S.C. §
3582(c)(1)(A)(i).  A prisoner's serious medical condition may
amount to an "extraordinary and compelling reason" however,
"[w]here the Bureau of Prisons has not moved to reduce the terms
of a defendant's sentence, the Court may not modify a term of
imprisonment [on grounds of a medical condition]." United
States v. Defeo, No. 90 Cr. 250, 2008 WL 2557425, at *3
(S.D.N.Y. June 26, 2008) (citations omitted); see also United
States v. Olachea-Merida, 242 F.3d 385, 385 (9th Cir. 2000)
(holding the court had no jurisdiction to modify a validly
imposed sentence on prisoner's own motion); United States v.
Smartt, 129 F.3d 539, 541 (10th Cir. 1997) (holding that the
court lacked jurisdiction to hear defendant's motion for
reduction under section 3582(c)(1)(A) because the Director of
the Bureau of Prisons had not brought motion).  On the other
hand, the Bureau of Prisons does have the ability to petition
this Court to reduce a sentence for purposes of compassionate
release.  See 28 C.F.R. 571.60-571.64 ("Compassionate Release"
application procedure).  The petitioner should make an
appropriate application to the Bureau of Prisons in accordance
with the Compassionate Release regulations.

## CONCLUSION

For the reasons explained above the petition is **denied**.

Because the petitioner has failed to make a substantial showing

of the denial of a constitutional right, the Court declines to

issue a certificate of appealability pursuant to 28 U.S.C.

§ 2253.  **The Clerk is directed to enter Judgment dismissing the**

**petition.  The Clerk is also directed to close this case and all**

**pending motions.**

SO ORDERED.

Dated:    New York, New York
          December 20, 2012

                                    _____
                                        John G. Koeltl
                                    United States District Judge

56